**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0845-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE E. RODRIGUEZ,
a/k/a JOSE RODRIGUEZ,

    Defendant-Appellant.

_____

Argued December 12, 2024 – Decided February 6, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-01-0013.

S. Emile Lisboa IV argued the cause for appellant (Galantucci & Patuto, attorneys; S. Emile Lisboa IV, on the brief).

Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann M. Justus, of counsel and on the brief).

PER CURIAM

Defendant Jose Rodriguez appeals from an October 21, 2022 judgment of conviction entered after a jury found him guilty of first-degree possession with intent to distribute marijuana, in violation of N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(10)(a); third-degree possession of cocaine, in violation of N.J.S.A. 2C:35-10(a)(1); and third-degree possession of marijuana, in violation of N.J.S.A. 2C:35-10(a)(3), and the court's aggregate twelve-year sentence. Defendant also appeals from various pre-trial orders, including orders denying his motion to suppress evidence of marijuana and cocaine and his statements to police made following his arrest.

We briefly discuss the facts from the motion record necessary to place our opinion in context. On February 28, 2017, Illinois State Trooper Sean Veryzer pulled over a Ford pick-up truck on I-180 in Illinois for not having mudflaps. Marie Stout was the driver of the truck and Lonnie Jacobs the passenger. While walking towards the truck, Trooper Veryzer stated, he looked into the rear window with his flashlight and observed a piece of plywood and cardboard partially covering a few black duffel bags on the truck bed. Trooper Veryzer suspected the truck was being used to transport marijuana. Trooper Veryzer approached the driver-side window and asked Stout for her driver's license and

A-0845-22

registration and observed that she exhibited "signs of extreme stress or nervousness." He asked Stout whether the truck contained marijuana, and she replied, "I don't know, I'm just helping drive." A computer check on Stout's driver's license informed Trooper Veryzer that her license was valid, but she had several prior arrests related to controlled dangerous substances.

Trooper Veryzer informed Stout and Jacobs he believed he had reasonable suspicion to walk his K-9 partner around the exterior of the vehicle and read Stout her <u>Miranda</u> rights.[1] The K-9 alerted Trooper Veryzer to a positive hit.

A subsequent warrantless search of the truck revealed eight duffel bags containing approximately 200 pounds of marijuana in the bed of the truck. The trooper arrested Stout and Jacobs. Following Stout and Jacob's arrest, they agreed to cooperate with the Drug Enforcement Agency (DEA), New Jersey State Police (NJSP), and Illinois law enforcement (collectively law enforcement officers), to execute a controlled delivery of the duffel bags of marijuana to defendant in New Jersey.

On March 1, 2017, at approximately 1:00 p.m., law enforcement officers set up surveillance in a parking lot in Old Bridge, New Jersey. There, law enforcement officers observed a white BMW X5 with New York license plates

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

enter the lot and park near Jacobs and Stout's truck. When they ran the plates on the BMW, law enforcement officers confirmed the BMW belonged to defendant. They observed Jacobs and defendant exit their respective vehicles and briefly speak. Defendant and Jacobs then returned to their vehicles and Jacobs followed defendant to a nearby apartment building complex.

Law enforcement officers followed Jacobs' truck to an apartment complex in Old Bridge where defendant and Jacobs again parked their respective vehicles and exited. At approximately 2:10 p.m., law enforcement officers observed Jacobs remove a total of eight duffel bags from the truck, placing six in the back of defendant's BMW. Defendant then took the remaining two duffel bags to a nearby apartment where he produced a key, unlocked the door, placed the bags inside, locked the door, and returned to the parking lot. Jacobs and Stout drove away in the truck. Law enforcement officers observed defendant retrieve a small, silver and black lockbox from the BMW and as he was walking back towards the apartment, officers from the NJSP arrested him.

Following defendant's arrest and his agreement to cooperate, NJSP Detective Peter Layng and DEA Special Agent John Yoo followed defendant from the courtyard of the apartment complex into the apartment where defendant had previously placed the two duffel bags. According to law enforcement, they

4                                                                                          A-0845-22

followed defendant into his apartment at his request.

While in the Old Bridge apartment, defendant provided information about the duffel bags of marijuana and consented to a search of the apartment, his vehicle, and the lockbox found in his possession. Defendant also signed three separate NJSP consent-to-search forms for the apartment, car, and lockbox.[2]

The signed consent forms show the search of the apartment began at 2:55 p.m. and ended at 3:35 p.m.; the search of the lockbox began at 3:05 p.m. and ended at 3:10 p.m.; the search of his car began at 3:25 p.m. and ended at 3:40 p.m. There is no body-worn camera or other video or audio footage or recording of defendant's verbal consent prior to signing the consent forms.

During the search of defendant's car and Old Bridge apartment, police seized a vault, a black chrome case, two large duffel bags containing marijuana, miscellaneous identification papers, and a small bag of marijuana. In the silver and black lockbox, they found two vacuum-sealed bags containing cocaine and, in the BMW, they found an additional six duffel bags containing marijuana.

Police transported defendant to his residence in New York intending to

---

[2] In total, defendant signed four consent forms: one for the Old Bridge apartment, one for his white BMW X5 that was parked in the parking lot of Ashwood Mall, Old Bridge; one for the silver and black lockbox; and the fourth for his apartment in New York City.

search that residence pursuant to defendant's signed consent. The record shows this consent form indicated the search began at 5:10 p.m. and ended at 5:40 p.m. There, police seized $69,580 in cash from a portable lockbox located in defendant's master bedroom.

Following the search of his Queens apartment, officers transported defendant to the NJSP barracks in Holmdel where Detective Layng conducted the first of two interviews that occurred that same night wherein defendant gave two statements. The first interview occurred at 10:45 p.m. and was recorded. The second interview began at 11:00 p.m. and was not recorded.

As a result of this day-long operation, law enforcement seized 200 pounds of marijuana, 1.5 kilograms of cocaine, and approximately $69,580 in cash, among other items.

On August 21, 2018, defendant moved to suppress the physical evidence seized by law enforcement officers and statements he made following his arrest. A first motion judge presided over the three-day hearing. In a January 14, 2020 written decision and order, the first motion judge denied defendant's application to suppress physical evidence seized as a result of the March 2017 multi-state surveillance operation. Defendant moved for reconsideration, which the first motion judge denied in a May 8, 2020 order.

A-0845-22

Defendant also moved to suppress statements he had made to police on March 1, 2017, arguing his statements were obtained in violation of Miranda. On March 2, 2021, a Miranda hearing was held before a second motion judge, during which Detective Layng and Special Agent Yoo testified for the State.

Detective Layng testified he could not "definitively say that he got the Miranda warning from [him]," but that defendant would have heard the Miranda warning prior to going into his apartment because in his twenty-two years on the job, "there ha[d] never been a scenario where somebody in [his] custody would not hear their Miranda warnings right away . . . ." He acknowledged, however, defendant did not sign a Miranda card until he was transported back to the NJSP barracks for questioning at 10:45 p.m.

On April 5, 2021, the second motion judge issued an oral decision and written order denying in part and granting in part defendant's motion to suppress his statements to police. She found there were three separate periods of time when defendant was questioned or interviewed and addressed each period seriatim.

As to the first period around the time of defendant's arrest in the parking lot of the apartment complex, the judge stated, it is "the [S]tate's burden to prove beyond a reasonable doubt that this defendant was . . . read his Miranda rights"

7

and to the extent that there is some doubt as to whether or who did the <u>Miranda</u> warnings and exactly when, "that's a doubt that really has to be resolved in favor of the defendant." And so, with respect to this first period of time, the judge could not find beyond a reasonable doubt that it was more likely than not that defendant was read his <u>Miranda</u> warnings. The judge determined defendant's statements during this period took place during a custodial interrogation, were unwarned, and thus inadmissible.

With respect to the second period of questioning, which the judge identified as 10:45 p.m., she found because defendant had signed the <u>Miranda</u> card and the interview was recorded there was no <u>Miranda</u> violation and denied defendant's motion to suppress the statements made in this interview. With respect to the third period of questioning, which the court determined occurred during defendant's second interview with Special Agent Yoo and NJSP Officer Mike Mintchwarner, the judge concluded these statements were inadmissible pursuant to <u>State v. Pillar</u>, 359 N.J. Super 249 (App. Div. 2003).

On April 5, 2021, the judge granted defendant's motion to suppress in part, suppressing only defendant's statement to law enforcement officers made in the parking lot of his apartment complex at approximately 2:00 p.m. and his unrecorded statement made to Special Agent Yoo and Officer Mintchwarner at

approximately 11:00 p.m. that same day.

The court denied suppression of defendant's 10:45 p.m. statement to police on March 1, 2017, wherein defendant admitted:  only he and his girlfriend had a key to the apartment; he knew there was marijuana in the duffel bags; his primary address was his New York residence; cocaine was found in the lockbox retrieved from his BMW; and the police recovered $60,000 to $70,000 in cash from his New York residence.

On September 17, 2021, defendant moved for reconsideration of the first motion judge's January 14, 2020 order.  On December 10, 2021, the second motion judge issued an order denying defendant's motion.  Thereafter, defendant was convicted and sentenced, as noted supra.  Defendant appealed and challenged several trial and pre-trial orders, including the second motion judge's order denying suppression of his statements to police under Miranda and the second motion judge's reconsideration order.

After a review of all the challenged orders, we address a preliminary concern with respect to the December 10 order denying defendant's reconsideration motion.  Appended to that order was the court's written statement of reasons authored by the judge's law clerk.  Such a procedure is contrary to our court rules and binding case law.  As we stated in Hungerford

v. Greate Bay Casino Corp., "[n]o authorization exists in our court rules for the performance of any judicial function by a law clerk, including the issuance of factual findings or conclusions of law. Any motion must be decided by the trial judge." 213 N.J. Super. 398, 402 (App. Div. 1986).

We accordingly remand for the court to consider defendant's reconsideration application anew and issue appropriate factual findings and legal conclusions consistent with this opinion. The court shall issue its factual findings and legal conclusions within thirty-days of the date of this opinion. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0845-22